AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 2:23-mj-244
A Black Kyocera Smartphone cellular telephone, secured )
by the Franklin County Sheriff's Office under FCSO )
Evidence #1194016 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Conspiracy to possess with intent to distribute controlled substances |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Marvich, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 11, 2023

_____
Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN A BLACK KYOCERA SMARTPHONE CELLULAR TELEPHONE, SECURED BY THE FRANKLIN COUNTY SHERIFF'S OFFICE UNDER SECURED UNDER FCSO EVIDENCE # 1194016 | Case No. 2:23-mj-244 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Ryan Marvich, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property - an electronic device - which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Your Affiant is a sworn Special Agent with the United States Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). Your Affiant has been a Special Agent within DHS since the Department's creation in May 2003. Your Affiant has been assigned to the HSI Columbus office since February 2008, where your Affiant has been involved with narcotics investigations. Prior to becoming a Special Agent with HSI, your Affiant served as an Officer with the United States

1

Secret Service, Uniformed Division beginning in January 1998. In June 1999, your Affiant accepted a position as a Special Agent with the United States Secret Service. In May 2003, your Affiant transferred employment to become a Special Agent with the United States Customs Service (USCS). In 2003, under the creation of the Department of Homeland Security, various components, including criminal investigators/special agents, with the USCS were merged with components, including criminal investigators/special agents, from the United States Immigration and Naturalization Service (INS) and formed U.S. Immigration and Customs Enforcement (ICE). Since then, criminal investigators/special agents and all related investigative functions of ICE have been moved into Homeland Security Investigations (HSI) within ICE.

3. Your Affiant is familiar with the operation of illegal drug trafficking organizations in central Ohio and how these drug traffickers utilize cellular telephones and other computer equipment in furtherance of their drug trafficking activity.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5. The property to be searched is identified as a Black Kyocera Smartphone cellular telephone secured by the Franklin County Sheriff's Office under secured under FCSO Evidence #1194016, hereafter being referred to as the TARGET CELLPHONE. The applied-for warrant would authorize the forensic examination of the TARGET CELLPHONE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On February 12, 2019, investigators with Homeland Security Investigations (HSI) and the Franklin County Sheriff's Office (FCSO) encountered Ruben Rodriguez Jr. who was found to be in possession of two kilograms of cocaine. Investigators originally located Ruben Rodriguez Jr. on February 11, 2019, while they were conducting routine surveillance at a Red Roof Inn located at 4530 West Broad Street, Columbus. At that time, investigators observed a silver Ford Fusion bearing Texas license plate KZB9897 parked in the Red Roof Inn parking lot. Upon running this license plate in law enforcement databases, investigators learned that this vehicle was registered to a Michael Rene Ponce in Buda, Texas. Investigators also learned that Ponce was arrested in March 2008 in Austin, Texas as part of a large heroin conspiracy case involving over a dozen other co-conspirators. Ponce was subsequently convicted for violation of Title 21 USC Section 846 (conspiracy to possess with the intent to distribute heroin) and was sentenced to 57 months in federal prison. The law enforcement databases also showed no connections to Ponce and any individuals in Ohio.

7. Investigators began surveillance on the Ford Fusion on February 11, 2019, as the driver, later identified as Ruben Rodriguez Jr. and his girlfriend, Beslin Peraza, ate lunch at a Bob Evans Restaurant located at 4331 West Broad Street, Columbus, Ohio, shopped at a Walmart near Hilliard Rome Road in Columbus and then went to see a movie at a local movie theater. It was apparent to investigators that these individuals were making attempts to "kill time" which is indicative to investigators as drug activity, specifically awaiting delivery of possible drug proceeds. While Rodriguez and Peraza were inside the Walmart, FCSO Deputy

3

Rob McKee ran his canine "Gator" around the silver Ford Fusion while it was parked in the Walmart parking lot. Gator gave a positive alert to the presence of narcotics inside the silver Ford Fusion. Eventually, Rodriguez and Peraza checked into a different hotel, the La Quinta Inn and Suites located on 5510 Trabue Road, Columbus, Ohio.

8. On February 12, 2019, investigators re-established surveillance on Rodriguez and Peraza as they traveled to 121 Stevens Avenue, Columbus, Ohio. Upon arriving, Rodriguez was observed entering this residence where he remained for approximately ten minutes. Following his departure from this residence, a deputy with FCSO conducted a traffic stop on the vehicle Rodriguez was driving. During a subsequent search of the vehicle, approximately 2.0 kilograms of cocaine and $30,006.00 in U.S. currency were discovered. In a subsequent interview, Rodriguez stated that he was in Columbus for the purpose of overseeing the arrival of cocaine and heroin that was being sent to individuals at 121 Stevens Avenue, Columbus, Ohio. He admitted that the cocaine in his car had been sent to these individuals at 121 Stevens Avenue approximately 1-2 weeks ago, and he came to Columbus at that time to make sure these individuals received this cocaine. After they received this cocaine, he went back to Texas. A short time later he learned that these individuals were not happy with the quality of the cocaine, so he was sent back up to Columbus. When he arrived this time in Columbus, around February 9, 2019, he was directed by his boss in Mexico to retrieve the cocaine that was already delivered and to oversee the arrival of approximately 2 kilograms of heroin that was arriving via UPS. According to Rodriguez, when he was inside the residence located at 121 Stevens Avenue, Columbus, Ohio, he stated that he saw the 2 kilograms of heroin that was sent. It was at this time the individuals at this residence paid him a partial payment of approximately $30,000 for this heroin. This was the money seized by investigators during the traffic stop on his vehicle. Ruben

4

Rodriguez Jr. was arrested on federal drug conspiracy charges, specifically conspiracy to distribute heroin, at that time. He has subsequently been convicted of this charge in the Southern District of Ohio. According to law enforcement databases, a Lashawn White was listed as an occupant during the time period that Rodriguez oversaw the cocaine and heroin arriving at the residence. The vehicle known by investigators as being used by Lashawn White has been observed at 121 Stevens Avenue during this time period.

9. Additionally, investigators have learned that Lashawn White was arrested by the Ohio Highway Patrol (OHP) on April 1, 2018, after a traffic stop on Livingston Avenue in Columbus, Ohio. During this traffic stop, troopers found a small amount of cocaine in the vehicle and White had a loaded handgun under his thigh while seated in the driver's seat. According to the arresting OHP trooper, when the handgun was found, White stated that if they seized his gun, he would just get another one because he lives on Stevens Avenue. White was arrested at that time. He subsequently was released from custody pending further court hearings.

10. On September 30, 2019, investigators identified a residence in Reynoldsburg, Ohio that they believed was being used as a "stash house" for storage and distribution of narcotics that was being supplied by individuals associated with the Latin Kings street gang in Chicago, Illinois. While investigators established 24-hour surveillance on this residence from October 18, 2019, through November 4, 2019, investigators observed that no one actually resided at this residence. Investigators did observe Lashawn White frequent this residence numerous occasions while bringing boxes and bags into and out of this residence. On November 21, 2019, investigators did execute a State of Ohio search warrant on this residence and located approximately 63 empty wrappers which appeared to be wrappers for kilogram quantities of narcotics.

5

11. On November 14, 2019, investigators executed a State of Ohio search warrant on the residence located at 121 Stevens Avenue, Columbus, Ohio. Upon executing this search warrant, investigators located numerous individuals inside the residence. Also found and seized from inside this residence were the following items (all weights are approximate): 180 grams of suspected powered cocaine, 33 grams of suspected crack cocaine, 15 grams of suspected heroin, 30 grams of suspected methamphetamine, 21 tablets of suspected suboxone, 10mg/325mg Oxycodone tablets, 2mg Alprazolam tablets and five firearms. These drugs were packed for individual sale, and it was apparent to investigators that this residence was being used as a selling point for numerous kinds of narcotics. Investigators found court paperwork in the name of Lashawn White in the living room of this residence at that time.

12. On November 21, 2019, at approximately 8:42am, investigators executed a State of Ohio search warrant at 669 South Kellner Drive, Columbus, Ohio. It had been determined that this was the residence of Lashawn White after he sold cocaine to a Whitehall Police Department confidential informant. Lashawn White was the only person found to be inside the residence during the execution of this search warrant. Some of the items found by investigators during this search were as follows (all narcotics have since been tested and confirmed by the Ohio BCI laboratory): 484.44 grams of a mixture of fentanyl and Tramadol, 9.46 grams of fentanyl, 18.14 grams of cocaine, 23.71 grams of a mixture of heroin and fentanyl, 3 pistols, one sawed-off shotgun, and approximately $20,363.00 in U.S. currency.

13. Also located in the hall closet was a Black Kyocera Smartphone. This telephone (hereafter referred to as TARGET CELLPHONE) was seized by the Whitehall Police Department as item# 19WHI-5232-PR and transferred to the Franklin County Sheriff's Department on February 22, 2023, and secured under FCSO Evidence #1194016.

14. Based upon your Affiant's training and experience, your Affiant knows that drug traffickers often use their cell phones which they maintain dominion and control over in the commission of their offense. Similarly, your Affiant also knows that these individual's cellular telephones can contain evidence such as telephone numbers reflecting names, and addresses of co-conspirators, and other associates as well as text messages, maps and photographs that could be considered as evidence of the offense under investigation.

15. The TARGET CELLPHONE is currently in the lawful possession of FCSO, and it was seized by the Whitehall Police Department following the execution of a State of Ohio search warrant on the residence located at 669 South Kellner Road, Columbus, Ohio on November 21, 2019. Therefore, while investigators might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

16. In my training and experience, I know that the TARGET CELLPHONE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET CELLPHONE first came into the possession of the Whitehall Police Department.

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

7

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic films. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

8

This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected

9

to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

18. Based on my training, experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

10

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the

11

application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET CELLPHONE** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____

Ryan Marvich
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on April 11, 2023:

_____
Kimberly A. Jolson
United States Magistrate Judge

13

## ATTACHMENT A

The property to be searched is identified as a Black Kyocera Smartphone cellular telephone, secured by the Franklin County Sheriff's Office under FCSO Evidence #1194016. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

1.    All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846 and involve Lashawn White since February 2019, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording Lashawn White's schedule or travel from February 2019 to the present;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.